UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA

    v.                           CRIM. NO. 97-245

ANGEL CHEVERE GONZALEZ

    Defendant

DEFENDANT'S MOTION FOR A NEW TRIAL FOR NEWLY
DISCOVERED EVIDENCE AND, OR, IN THE ALTERNATIVE
FOR  A WRIT OF ERROR -CORAM NOBIS

---

Now comes the Defendant, Angel Chevere Gonzalez, through himself, who moves the Court to grant defendant a new trial based on newly discovered evidence, pursuant to Rule 33, Federal Rules of Criminal Procedure, as well as, defendant's Sixth and Fourteenth Amendments to the United States Constitution.

In support of this Motion, Angel C. Gonzalez, states that a jury convicted him on one count of conspiracy to possess with intent to distribute 250-kilgrams of cocaine, 21 U.S.C.A. § 846.

Mr. Gonzalez seeks a new trial alleging the following issues in his motion pursuant to Rule 33:

1. Ineffective assistance of trial and appellate counsels;

2. judicial errors;

3. newly discovered evidence demonstrating defendant's factual, actual or legal legal innocence;  and

4. prosecutorial misconduct;

5. judicial bias.

In addition, the Defendant relies upon the attached memorandum of law and points of authorities.

Respectfully Submitted

Angel Chevere Gonzalez

Page Two

DEFENDANT'S MEMORANDUM OF LAW AND POINTS OF AUTHORITIES

INTRODUCTION:

Defendant Chevere-Gonzalez (hereinafter Defendant or Chevere)
and nine other codefendants were charged with conspiracy to possess
with intent to distribute more than 1,000 kilograms of cocaine,
more than 5-kilograms of heroin and, more than 5,000 pounds of mari-
juana.

On February 5, 1998, a superceding indictment was filed adding
four new defendants and additional overt acts. The defendant's trial
commenced in 1999, and subsequently concluded with a conviction on
March 31, 2000. Defendant was thereupon sentenced to 45-years im-
prisonment. On April 10, 2000, defendant appealed his sentence and
trial irregularities. However, in February 2003, the First Circuit
Court of Appeals affirmed defendant's conviction. See United States v.
Nelson, 319 F.2d 12 (1st Cir. 2003).

## STATEMENT OF THE FACTS

Angel C. Gonzalez and nine others were charged on October 30, 1997
in a single count indictment with conspiracy to possess with intent
to distribute more than 1,000 kilograms of cocaine, more than 5-kilos
of heroin and more than 5,000 pounds of marijuana.

This case represents the culmination of wiretap authorizations
by the Honorable Jose A. Fuste, U.S. District Court Judge, to record
cellular phone conversations of codefendant, Raul Rivera, by the
Government through cooperating source, Jorge H. Miller. Following
the expiration of the 30-day wiretaps, several extensions were granted

Page Three

on July 25, 1997 and September 10, 1997.

In July 1998, defendants moved to jointly suppress all wiretap evidence. Initially, the court granted the defendants motion for a Franks hearing, but then denied the motion without a hearing, November 6, 1998.

The most  purporting evidence against the defendant came from a self-confessed criminal and government informant, Luis T. Orozco. (Tr. 591, 595). Mr. Orozco testified to being present during a drug transaction in which the defendant stood in as an armed guard to protect the shipment in July 1997. Despite Orozco's testimony of the defendant's involvement, Orozco's testimony was rived by the testimony of nineteen FBI and DEA Agents on the scene, in closer proximity than Orozco (who was close to 1,000 feet away sitting in a truck), but the agents never once admitted to having seen the defendant at all. . . nor any drug transactions for that matter. (Tr. 644, 812). (Sentence Tr. 11). This fact is in total contradiction and refutation with Orozco's testimony that is, that defendant Gonzalez was a part of this arcane drug conspiracy.

Moreover, Orozco also testified that Chevere was also involved in a 120-kilogram deal and that the drugs were counted at Chevere's mother's home in Catano. (Tr. 645). During cross examination, however, Orozco admitted that he had never been in Chevere's mother's home and that he was not present when the 120-kilograms of cocaine were actually counted. (Tr. 772).

Notwithstanding the jury's findings of guilt [a finding not  based on drug quantity and type], the trial court found by preponderance of

Page Four

evidence - defendant's guilt - and, sentenced defendant to 540 months imprisonment.

On appeal, the court appointed Attorney Kenneth M. Diesenhof, Esq., who filed an Anders brief (386 U.S. 738), alleging that their were non-frivolous issues and thereupon, urged affirmance of defendant's direct appeal. . . in March 2001. Subsequently, new counsel, Raymond Rivera, was appointed. Counsel advanced three points: (1) that Title III wiretaps should have been suppressed; (2) a special verdict sheet should have been given and, the jury instructed on the unanimity requirement findings on drug type and amounts, and (3) resentencing was warranted under Apprendi v. New Jersey, 120 S.Ct. 2348 (2000), for violation on the second point. Defendant's brief was submitted April 2002. United States v. Gozalez, No. CR-00-1628.

Defendant's direct appeal was affirmed in all respects February 7, 2003. United States v. Nelson, 319 F.3d 12 (2003).

NEWLY DISCOVERED EVIDENCE

A. ACTUAL OR FACTUAL INNOCENCE CLAIMS.

Defendant presents this motion based on his actual or factual innocence   under Schlup v. Delo, 115 S.Ct. 851 (1995). The Supreme Court's only specific decision on this issue came in the course of stating the holdings of Schlup, 513 U.S. 298 (1995), the seminal decision governing miscarriage of justice exception. In assessing the adequacy of defendant's showing, therefore, the district court is not bound by the rules of admissibility that would govern a trial. See also Souter v. Jones, 6th Cir., No. 03-1528, 1/18/05, 76 Cr. L. 308.

Page Five

Defendant Chevere would proffer that the affidavits of Tomasa C.
Gonzalez, Edwin Marrero and Raul Rivera, attest to, and go straight
to the core of his actual or factual innocence claim. (These affidavits
are expected to be filed soon thereafter or, will accompany this motion).
Moreover, the affidavit of Tomasa C. Gonzalez eloquently summarizes,
and particularizes the extent of the Government's illegal conduct
or guise to stage a crime implicating defendant. Ms Gonzalez overheard
a conversation between the two main prosecuting attorneys while  she
(Ms Gonzalez) was in the lady's room, at the U.S. District Court for
the District of Puerto Rico, during the trial of her brother, the
defendant.  The Assistant U.S. Attorneys lauded themselves for setting
up  the defendant...knowing they had no evidence whatsoever  against
him...but only affiliations.

Additionally, the two other affidavits from Edwin  and Raul clearly
show that defendant was not at the scene of the drug shipments in
July 1997, as alleged by cooperating witness, Orozco. Marrero and
Rivera's averments, in their affidavits, show juxtaposing relationship
with the testimony of the DEA and FBI surveillance teams personnel
--who stated "they never saw defendant at the scene, July 19, 1997."
. . . nor any drug transctions happening. . . for that matter.

Because of this misconduct [prosecutorial to frame an innocent
defendant] on the part of Government officials, defendant was prevented
from presenting this 'newly discovered evidence' until this juncture.
Claims of actual innocence--to be credible, such a claim requires
petitioner to support his allegations of constitutional error with new
reliable evidence - whether it be exculpatory-scientific evidence,

Page Six

trustworthy eyewitness accounts, or critical physical evidence - that
was not presented at trial. Schlup, supra. Even if defendant's new
evidence was not linked to the constitutional infirmities he raises,
Schlup does not require that a prisoner's new evidence have any such
connection to his constitutional claims a    prerequisite for applying
the miscarriage of justice exception. See United States v. Roman, 938
F. Supp. 288, 292 (E.D. Pa. 1996)(the new evidence of actual innocence
need not be directly related to the substantive claims the defendant is
presenting because the claims themselves need not demonstrate that he
is innocent)(emphasis added)(citation omitted).

A reading of Schlup itself demonstrates that the Supreme Court did
not intend to require a link between the evidence of actual innocence
and the prisoner's constitutional claims. The Court explained the pur-
pose of the actual innocence requirement:

> To ensure that the fundamental miscarriage of justice
> exception would remain "rare" and would only be applied
> in the "extraordinary cases", while at the same time
> ensuring that the exception would extend relief to those
> who were truly deserving, this Court explicitly tied  the
> miscarriage of justice exception to the petitioner's inno-

cence.

Schlup, 513 U.S. at 321.  The Court stated that "tying the exception
to a prisoner's innocence reflects the "concern about the injustice that
results from the conviction of an innocent person [that]  has long
been at the core of our criminal justice system."" Id at 325. Thus,
the miscarriage of justice exception is driven by the belief that funda-
mental notions of justice do not comport with the idea of procedurally
barring an innocent man from raising his constitutional claim.

Page Seven

Defendant's motion presents both substantive and constitutional claims of actual or factual innocence, corroborated by affidavits, coupled with constitutional claims for ineffective assistance of counsel and, compendius judicial errors, inter alia, which warrants the granting of a new  trial.

ARGUMENT

B. COURT HAS THE POWER TO GRANT THIS MOTION

A motion for a new trial in criminal cases, considered under Rule 33, F.R. Cr. Pro., provides:  (a) Defendant Motion.  Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.

The only ground for a new trial expressly set forth in Rule 33 is 'newly discovered evidence', certain other fundamental errors, such as the ineffectiveness of counsel, may justify the grant of a new  trial, United States v. Russell, 221 F.3d 615, 619 (4th Cir. 2000), United States v. Smith, 62 F.3d 641, 650-51 (4th Cir. 1995)(ineffective assistance of counsel); trial irregularities, such as judicial error; prosecutorial misconduct, see United States v. Scotti, 47 F.3d 1237, 1246 (2d Cir. 1995)(erroneous juror instruction); United States v. Dixon, 658 F.2d 181, 193 (3d Cir. 1981)(prosecutorial misconduct) and where the jury's verdict is against the evidence. Moreover, a claim of ineffective assistance of counsel may be brought as a motion for a new trial or other grounds under Rule 33. United States v. Woods, 812 F.2d 1483 (4th Cir. 1987).  Such motion may be filed regardless of whether the bases for the claim are evidence in the trial record. see e.g. Taglia, 922 F.2d at 417; United States v. Logan, 861 F.2d 859, 863 (5th  Cir.

Page Eight

1988). Additionally, other types of egregious errors which have been deemed sufficient to meet a new trial include the failure of the prosecution to disclose pertinent information. United States v. Udechukiva, 11 F.3d 1101, 1106 (1st Cir. 1993), the failure to give the jury special interrogatories [resulting in an ambiguous verdict], United States v. Garcia, 907 F.2d 380, 381 (2d Cir. 1990) cert den., 502 U.S. 1030 (1992) and, the erroneous admission of a defendant's prior convictions. United States v. pagan, 721 F.2d 24, 30 - 31 (2d Cir. 1983).

Further, a district court's power to grant a motion for a new trial is broad. In considering a motion under Rule 33, the court is not bound to assess credibility and draw all inferences in favor of the prosecution, but should evaluate the evidence independently. United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir,. 1985).

(i) **Coram Nobis' alternative jurisdiction**

This court likewise has supplemental jurisdiction under the All Writs Act [28 U.S.C.A. § 1651(a)] in the form of a writ of error - coram nobis...as an alternative jurisdiction if none is available for the relief sought herein.

28 U.S.C.A. § 1651(a) authorizes this court to hear defendant's motion under common-law principles...when there is no other statute applicable. Section 1651(a) states:  (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law. The All Writs Act is a residual source of authority to issue writs are not otherwise covered by statute. Where a statute specifically addresses the particular issue

Page Nine

at hand, it is the authority, and not the All Writs Act, that is

controlling. See carlisle v. United States, 517 U.S. 416, 429 (1996)

(quoting Pennsylvania Bureau of Corrections v. United States Marshals

Service, 474 U.S. 34, 43 (1985)).

## ARGUMENT

A. TRIAL COUNSEL'S DEFICIENT PERFORMANCES, PRETRIAL, TRIAL AND SENTENCING WAS IN-
EFFECTIVE ASSISTANCE OF COUNSEL

During the pretrial stages, Attorney De Juan refused to conduct any pretrial in-

vestigations which to obtain, or seek, any potential witnesses on behalf of the defen-

dant. That during the times of the overt acts in the indictment, defendant was under

house arrest in 1997, and could not have participated in any of the acts spawning the

conspiracy, October 30, 1997. A potential witness to the house arrest, Social Worker

Elpidio Hueltas, and former boss, Raul Rivera Sr., if investigated and interviewed,

would have confirmed defendant's whereabouts on many of the dates and times mentioned

in the indictment. Had attorney De Juan conducted a minimal investigation, ferreted

these facts, counsel may well have been in able to present a plausible defense of

'actual innocence', alibi, or innocent presence...even during the times of the conspir-

acy where Chevere was alleged to have made personal appearances. See Brown v. Myers,

137 F.3d  1154 (9th Cir. 1998)(ineffective assistance for failing to investigate

available testimony supporting petitioner's alibi); U.S. v. kaufman, 109 F.3d 186

(3d Cir. 1997)(ineffective for not investigating law and facts relevant to plausible

defense); Williams v. Ward, 110 F.3d 1508 (10th Cir. 1997)(same); Wiggins v. Smith,

123 S. Ct. 2527, 156 L.Ed.2d 471 (2003).

If a thorough pretrial investigation had been conducted, and witnesses inter-

viewed, counsel would have been in a better posture to argue a defense of actual

innocence. . . consistent with, and also supported by the testi-

Page Ten

mony of the nineteen (19) federal agents who testified that they never saw Chevere throughout their investigation of the members in the allegded conspiracy. See for example, Murray v. Carrier, 477 U.S. 384-86 (1986)(a single serious error or failure can amount to ineffective assistance of counsel).

Counsel de Juan's performance fell below the standards recognized in Strictland, in that, investigation is critical to making a well informed decision. Wiggins, 123 S.Ct. 2527 (2003). Because no investigation was ever conducted, Chevere was denied the right to compulsory process of witnesses in his favor [5th Amendment violation] and, denied the Sixth Amendment right to present a defense of actual innocence.

Assuming, for purposes of the Strictland analysis, that the foregoing failures were potentially prejudicial to petitioner Chevere, it cannot be said from the present record that counsel's performance did not fall below the Strictland objective standard....This is because Chevere has pleaded that the failure's in defending him were based on failures to investigate the law and facts material to him in pretrial, trial sentencing, and direct appeal, however innocently unintentional, but a complete abandonment of counsel's duty to advocate Chevere's case and cause. See U.S. v. Soto, 132 F.3d 56, 58 (D.C. Cir. 1997); Wiggins, 123 S.Ct. 2527 (2003); Mays v. Gibson, 2000 U.S. App LEXIS 8858 (10th Cir. 2000)(citing Williams v. Taylor, 120 S.Ct. 1495, 1512 - 16 (2000); Jackson v. Calderon, 2000 U.S. App. LEXIS 9040 (9th Cir. May 8, 2000)(same).

B. PRETRIAL CONFLICT OF INTEREST

Page Eleven

Petitioner Chevere contends that Attorney de Juan created a potential, per se or actual conflict of interest between them by attempting to extort and solicit funds from Chevere. From the beginning of de Juan's representation of Chevere, all counsel de Juan discussed with the petitioner was de Juan's desire to have petitioner become a government informer and witness against his co-conspirators and, to make a large retainer payment to de Juan for better representation of Chevere.

That attorney de Juan, in order to illustrate this conflict of interest, deliberately chose not to interview "any" potential witnesses for Chevere [Raul Rivera Sr. and Social Worker Elpidio Hueltas] until Chevere made payment of the $25,000 , although counsel was being paid by the Court under the Federal Criminal Justice Act, 18 U.S.C.A. § 3006A.

That counsel never once discussed with Chevere his efforts to pursue any plea negotiations with the government for a reduced sentence, see Anders v. California, 386 U.S. 738 (1967), nor contrived any efforts for a plea all the way up unto the trial date - - because of the high conviction rates by the Government, people often plead guilty. . . despite their innocence. . . to avoid a lengthy prison sentence. De Juan's refusal and failure to try to secure a plea negotiation was done in order to facilitate Chevere receiving a 45-year sentence, knowing that the risk of a trial would subject Chevere to career offender sentencing.

Because of this potential or actual conflict of interest, Chevere demanded that Mr. de Juan remove himself from the case, in many instances, but, however, because of the language barrier [Chevere spoke no English], de Juan often  would speak to the Court in English and misinformed the court

Page Twelve

of Chevere's dissatisfaction with counsel's representation. See <u>Mickens</u>
<u>v. Taylor</u>, 535 U.S. 162, 166 (2002); <u>Wood v. Georgia</u>, 450 U.S. 261, 271
(1981).

Additionally, counsel de Juan failed to file any pretrial motions
to suppress evidence, use of wiretap information, voice exemplars from
telephone conversations. . . based on improper affidavits to Magistrate
Judges's. . . relying exclusively, if not solely, on coconspirators
counsels' to lead the way for de Jaun. See <u>In re Applications for  Inter-</u>
<u>ception of Electronic Communications</u>, 2 F. Supp.2d 177, 178 (D. Mass.
1998)(quoting U.S v. Solemme, 978 F. Supp. 343, 348 (D. Mass 1997))
(emphasis in original).

Moreover, despite petitioner's extensive criminal record and back-
ground, de Juan never prepared Chevere to testify in his own behalf
after de Juan had already precociously decided that he wouldn't be
calling any witnesses for Chevere [leaving Chevere to believe that the
Government's case was very weak], in an effort to defeat all and any
hopes of Chevere winning his case. See <u>Anders v. California</u>, 386 U.S.
738 (1967); <u>Strictland v. Washington</u>, 466 U.S. 668 91984); <u>U.S. ex rel</u>
<u>Casey v. Wolff</u>, 727 F.2d 656 (7th Cir. 1984)(defense counsel's out-of-
hand rejection of potential witnesses and decision not to call witness
because prosecutions case was so weak falls below the minimum standards
of professional competence.)

A defendant claiming ineffective assistance of counsel must esta-
blish the existence of an 'actual conflict' of interest and demonstrate
that the conflict of interest adversely affected his lawyer's perfor-
mance at trial. <u>Sullivan</u>, 446 U.S. at 350; <u>Reyes-Vejerano v. U.S.</u>,  276

Page Thirteen

F.3d 94, 97 (1st Cir. 2002)( a defendant that raises no objection at
trial must demonstrate in his 2255 petition that an actual conflict
of interest adversely affected the adequacy of his representation).
The First Circuit Court of Appeals elaborated on Sullivan by requiring
the defendant to prove two components; (1) that counsel could have
pursued a plausible alternative defense strategy, and (2) such an alter-
native tactic was inherently in conflict with or not pursued due to
the attorney's other loyalties or interest. Reves-Vejerano, 276 F.3d
at 97; Familia - Consoro v. U.S., 160 F.3d 761, 764 (1st Cir. 1998).

In this case, de Juan should have pursued an alternative defense
startegy by permitting (and preparing) Chevere to testify about not
having any knowledge of the conspiracy, that the conversation(s) he  had
recorded involved work at a friend's home. . . regarding placing glass
blocks in his friend's home. . . not kilograms of cocaine [Federcio
Naranjo Rosa]. Additionally, Chevere wanted to testify at his trial,
despite his criminal past, but de Juan coerced and advised him not to
take the stand. . . because of the case being weak. Chevere's testimony
could have provided the jury with testimony refuting the government's
evidence. Moreover, this alternative defense strategy would have signi-
ficantly weakened the government's argument under the Pinkerton theory
(conspiracy analysis) that it was reasonably forseeable for Chevere to
have been responsible for 250 - 1,000 kilograms of cocaine. . . or,
to have knowledge of the coconspirators intent and future plans.

De Juan did not have Chevere testify because his testimony would
have been inherently in conflict with de Juan's loyalty to money and,
the Government's (as a former employee of the U.S. Attorneys Office)

.Page Fourteen

and inherently in conflict with de Juan's desire to not to provide
Chevere with a plausible defense. See Brien v. U.S., 695 F.2d 10, 15
(1st Cir. 1982). De  Juan's decision to keep Chevere from testifying
resulted from his conflict of interest in maintaining his loyalty to
the U.S. Attorneys Office, for retainer payments of twenty-five thousand
dollars from Chevere, coupled with the areas mentioned above, thus de-
prived Chevere of effective assistance of counsel.

   Even if the Court concludes that Chevere's ineffective assistance
of counsel resulting from an actual conflict  of interest fails, the
court must grant Chevere's claim of ineffective assistance of counsel
because of the existence of a 'potential conflict of·interest' claim.
To prevail under a potential conflict of interest claim, a defendant
"must" establish both (1) that counsel's conduct fell below an objec-
tive standard of reasonableness and (2) that but for this deficient
conduct, the result of the trial would have been different." Strictland
466 U.S. at 668 (1984). De Juan's loyalties and interests to money and
status with the government fell below an  objective standards of reason-
ableness and, but for de Juan's conflict of interest, the results of
Chevere's trial would have different. Id.

   Mr. de Juan's close ties and association's with the Government,
represents a conflict of interest measurably below what constitutes
reasonable representation. See American Bar Association Model Rules  of
Professional Conduct. Rule 1.7, Conflict of Interest; Strictland, 466
U.S. at 688 - 89 , ABA 1.7 Comment 1. De Juan's close ties to the
Government, prevented him from providing Chevere sound representation
free of the pressures and feelings of loyalty to the Government, needless
to say, money. De Juan's past employment and affiliation with the
Government [U.S. Attorneys Office] is alone sufficient to demonstrate a

conflict of interest . . . preventing de Juan 's representation of Chevere.

These conflicts of interest in de Juan's relationship with Chevere affected de Juan's reasonable professional judgment and con- tributed to his decision not to have Chevere testify at his trial (al- though he had no witnesses for the defense). See e.g. Griffin v. Cali fornia, 380 U.S. 609, 611-12 (1965)(right to testify); Hardy, 37 F.3d 753, 757 (1st Cir. 1994). Petitioner Chevere wanted to testify to explain that he didn't know about any conspiracy. De Juan unreasonable conduct, because of his conflict of interest and remaining loyalty to the government, besides greed, prejudiced Chevere and, denied Chevere effective representation.

C. FAILURE TO REMAIN ABREAST OF CASE LAW

It cannot be denied that Orozco was a government agent, finan- ced and supported by the Government, assigned the task of infiltrating drug organizations in both Colombia and Puerto Rico. Petitioner Chevere through other members were alleged to have conspired with Orozco... thus, giving birth to the instant conspiracy, had no affiliation with this organization. Had counsel de Juan been effective, counsel would have known that petitioner Chevere could not be a conconspirator with a government agent, and therefore, de juan should have argued the facts and law. See example, U.S. v. Lewis, 53 F.3d 29 (4th Cir. 1995); U.S.v. Brink, 39 F.3d 419 (3rd Cir. 1994); Escobar de Bright, 742 f.2d 1196, 1200 (9th Cir. 1984); Pennell , 737 F.2d 521, 536 (6th Cir. 1984), cert denied, 469 U.S. 1158 (1985); Trombello, 666 F.2d 485, 490 n.e (11th Cir.) cert denied, 456 U.S. 994; Barnes  604 F.2d 121, 161 (2nd Cir. 1979). cert denied, 446 U.S. 907 (1980);

Page Sixteen

Sullivan v. U.S., 1995 U.S. App. LEXIS 16590 (7th Cir. 1995)(ineffec-
tive assistance of counsel of counsel failed to challenge conviction
for conspiracy with government agent.) Compare Murray v. Carrier, 477
U.S. 384 - 86 (a single serious error or failure...ineffective assis-
tance of counsel); U.S. v. Kauffman, 109 F.3d 186 (3rd Cir. 1997)
(ineffective for failing to investigate law and facts relevant to
plausible defense); Williamson v. Ward, 110 F.3d 1508 (10th Cir.
1997)(same); Headley, 923 F.2d 1079, 1083 - 84 (2rd Cir. 1991)(same);
Wiggins v. Smith, 123 S. Ct. 2527 (2003)(counsel's failure to investi-
gate mitigating evidence could not be strategic "because the investi-
gation supporting their choice was unreasonable.").

   D. SENTENCING INEFFECTIVENESS

        Mr. Chevere contends that counsel de Juan provided him in-
effective assistance during the sentencing hearing phase by failing
to present arguments (based on awareness of counsel's applicable
law) against the Court assessing a two-point increase for Possession
fo a Firearm in connection with a drug offense that could not be deemed
directly connected to the alleged drug trafficking activities.

        That the only individual capable of placing a weapon in the
hand  of mr. Chevere was Orozco, . . . who was very confused about
what he actually saw in Chevere's hand(s) from a considerable distant
away. Moreover, Orozco's testimony was shattered and discredited by
federal agents  testimony, and who witnessed the events, but never
testified that they saw "any weapon in the hands of petitioner Chevere,"
or at any drug transaction, for that matter.

        Petitioner Chevere's PSR Report makes reference to the two-point

Page Seventeen

increase and application under U.S. sentencing Guidelines 2D1.1(b)(1).
Nevertherless, the mere existence of a 'firearm' is insufficient to
support a Section 2D1.1. enhancement as a matter of law. The Govern-
ment has the burden of proving under 2D1.1(b)(1) of showing by a
preponderance  of evidence that a temporal and spatial relation existed
between the weapon, the drug trafficking activitiy, and petitioner.
U.S. v. Vasquez, 161 F.3d 909 (5th Cir. 1998).

     The Probation Officer erroneously relied on scant information  to
support a basis for the two-point level increase which fails to sup-
port that temporal and spatial relation existed between the weapon,
the drug trafficking and petitioner Chevere.

     The Court, therefore, erred in relying on insufficient information
in the PSR to support the upward adjustments (which should have been
objected to) and, in its perception of a firearm evolvement in this
case. Glover, 148 L.Ed.2d 604 (2000) citing U.S. v. Phillips, 210
F.3d 345 (5th Cir. 2000)(finding prejudice under the Sentencing Guide-
lines when error by counsel led to an increased sentence.)

     E. FAILURE TO REQUEST AN EXPERT WITNESS TO MUSTER A DEFENSE

          Petitioner Chevere claims prejudice and deficient performance
of de Juan for his refusal to seek an order from the Court for an
expert witness with expertise in the filed of 'voice exemplars, audio
or voice transmission, Rules 901(A), 901 (B)(5) and 801(D)(2)(e)
Federal Rules of Evidence, to muster a defense [plausible] of actual
innocence or factual innocence, as well as, to elucidate for the
jury the drug cultural language (slang) used in the streets involving
drug trafficking. Moreover, such an expert was necessary so that the

Page Eighteen

jury would know that what he was speaking of over the telephone was not drug transctions, but legitimate business dealings. Cf. <u>Bell v. Arn,</u> 536 F.2d 123 (6th Cir. 1976); <u>Smallwood v. Gibson,</u> 191 F.3d 1257, 1276-77 (10th Cir. 1999); <u>Kumbo Tire Comp. v. Carmichael,</u> 526 U.S. 137 (1999).

F.  FAILURE TO FILE PRETRIAL SUPPRESSION MOTIONS

Consistent with defendant's contentions of ineffectiveness of counsel, counsel's deficient and unreasonable performances are demonstrated by trial counsel, De Juan's, failure to file a pretrial suppression motion...suppressing the evidence seized at # 2B14, Villa Aurora, in Catano, Puerto, Rico consisting of:  Ledgers, telephone books, photographs, directories, business card's of Raul Rivera, personal items, inter alia. Counsel was so countermanding during the pretrial stages by failing to file a suppression motion based on unlawful seizure of property being the product of an unlawful search and seizure, because defendant **was not** the proprietor of the property nor lease holder, and, therefore, he could not give his consent to searching the premises to FBI Agent Montalvo, without the express consent and permission of owner. . . on November 20, 1997. (Tr. 818-832). See <u>Brinegar v. U.S.</u> 375 U.S. 493 (1958); <u>Horton v California,</u> 496 U.S. 128, 137 n. 7 (1980)"no amount of probable cause can justify a warrantless search absent exigent circumcstances); <u>People v. Winpigler,</u> 8 P.3d 439 (Colo. 1999)(warrantless searches is presumed to violate the constitution provisions for bidding unreasonable searches and seizures especially, where there is a warrantless intrusion into a house); <u>U.S. v. Basinki,</u> 7th Cir. No. 99-3933, 9/15/00, 67 Cr. L. 784 (same); <u>katz v. U.S.,</u> 389 U.S. 347, 357 (1967); <u>Flippo,</u> 120 S.Ct. 7 (1999); <u>Illinois v. Rodriquez,</u> 497 U.S. 177 (1980); <u>Welsh v. Wisconsin,</u> 466 U.S. 470 (1984); <u>U S. v. matlock,</u> 415 U.S. 764 (1974).

Defendant was prejudiced by counsel's lack of prescience because the illegally obtained evidence against him was used against petitioner. . .

Page Nineteen

as a nexus to tie Chevere to a purported conspiracy. . . albeit, Chevere claimed no prior knowledge or affiliation other than being an employee at fast Transportation, a business of one of the alleged co-conspirators. Had counsel filed such a motion during the pretrial stages, the results of the proceedings would have been different and, this illegally obtained evidence would have been discarded and possible undermined the Government's case in chief. See Kimmelman v. Morrison, 477 US 365 (1986). Criminal Rule 12, F.R. Crim. Pro.

G. Failure To Object To Improper Foundation By Government

Chevere contends that trial counsel was so countermand that De Juan failed to object to the government's failure to lay a proper foundation to Luis Torres Orosco's testimony as a lay person and cooperating witness, as well as, Orosco being considered a de facto expert witness with respect to 'drug coded messages' and idoiomatic expression used by drug dealer which to connect Chevere with the instant conspiracy. See e.g. US v. Garcia, 2nd Cir., No. 01-1068 5/17/02, 71 Cr. L. 270 (2002) government failed to set out a sufficient foundation for cooperating witness's lay opinion that defendant knew that the witness was speaking in code. See federal Rule of Evidence 701(a), 404 (b). Transcripts dated september 10, 1999, pp. 672 - 675, 678 - 81.

H. Failure To Object To Trial Proceedings Out of The Presence Of The Jury.

Records of the trial indelibly reveal counsel's deficient trial performance and failure to adhere to court rules where counsel failed to object to the continuous taking of testimony from government witnesses out of the jury's presence. Transcripts September 10, 1999,

Page Twenty

pp. 654, lines 12 - 15, 667. In a criminal prosecution, a defendant has a Sixth Amendment right to a jury trial on all the facts and evidence, including the taking of testimony. Chevere was deprived of such a right during a critical stage of the proceedings as a result of De Juan's failure and lack of sagacity to coerce the Court to await the return of the jury to hear "all the evidence" before deciding the petitioner's guilt or innocence.' See Cronic, 446 US 684 (1974).

I. No Former Attempts To Plea bargain For A Lenient Sentence and Plea Prior To Trial

In this case, the record illuminously discloses that somehow no plea offer's or plea bargaining attempts were sought, and none were obtained prior to trial. The Court eloquently highlighted this point on September 13, 1999, p. 760, "that plea agreements were offered to the other co-conspirators", but, however, not to Chevere. The reasons being is because trial counsel de Juan never sought to engage the Government to consider an offer for his client. Plea bargaining nego- tiations generally focus of (1) the offense or offense to which a plea will be entered and what charges will be dismissed, (2) factual bases to be proffered by the government and agreed to by defense; govern- ment's position on bond status between the plea and sentence, (3) government's position concerning sentencing enhancement provision, (4) government's position at sentencing and, (5) sentencing guidelines applications. US v. Rodriguez, 929 f.2d 747, 752 (1st Cir. 1991)(per curiam)(failed to inform petitioner of government's plea offer).

Counsel's failure resulted in a new superceding indictment with additional overt acts because counsel never negotiated any plea bargain nor approached defendant with a plea offer as his co-conspirators.

Page Twenty-One

See e.g. Bordenkircher v. Hayes, 434 US 357, 363 - 65 (1978) where
court found nothing improper in the prosecutor'a threat to indict
the defendant on additional charges if the defendant did not accept
the government's offer. US v. Goodwin, 457 US 368 (1982). It may have
been in the best interest of defendant to plead guilty to a lesser
charge to avoid the risk of conviction of more serious charges, even
if the defendant is in fact innocent or, for whatever reason, cannot
admit his guilt under an Alford plea. North Carolina v. Alford, 400
US 25 (1970).

The failure to involve plea bargaining in the defense strategy
falls short of the constitutionally required assistance to be provided
to a defendant in a criminal case. Boria v. Keene, 99 F.3d 492 (2nd
Cir. 1996). See also US v. Gonzalez-Vasquez, 219 F.3d 37 (1st Cir.
2000). The fact that counsel did not appreciate the import of the
government's intention to introduce other crimes evidence that would
connote Chevere's posit involvement in threats and predilectidn
of obstructing justice, as well as, protrarying him as a dangerous
offender, furthers arguments that Chevere was victimized by ineffec-
tive assistance of a constitutional magnitude. Boria, at 497 (had
trial counsel taken the time to learn of certain ruinous  statements
petitioner had made the efficacy of a plea bargain would have been
more clearly recognized).

Furthermore, the failure to attempt 'any' plea negotiations
placed Chever in a posture where he was subjected to, and sentenced
as, a 'career offender' to forty-five (45) years in prison, based
exclusively on De Juan's muse that "the government's case was weak,"
and the case was a 'cinch' to win.

Page Twenty-Two

Had counsel taken the times and initiative to learn of the ruinous telephone conversation, introduced into evidence against his client, the illegally obtained items from his girlfriend's house which purported to connect him to the conspiracy, the probability of persuading Chevere to accept a plea or negotiate a deal would have matured from a reasonable probability - to a very strong likelihood. See **ABA Model Code of Professional Responsibility**, Ethical Consideration 7 - 7 (1992): A defense lawyer in a criminal case has the duty to advise his client fully whether to a particular plea to a charge appears to be desirable. Anthony G. Amsterdam, In Trial Manual 5 for the Defense of Criminal Cases. This decision must ultimately be left to the client's wishes. Counsel cannot plead a client guilty, or not guilty, against the client's will. [citation ommitted]. But counsel may and must give the client the benefit if counsel's professional advice on the crucial decision. § 201 at 339. Quoting Boria, at 497. Compare and see US v. Perez, 2nd Cir., No. 02-1105, 4/25/03; US v. Jeter, 11th Cir., No. 02-15326, 73 Cr. L. 181, 5/14/03, defendant's who qualify as a career offender are not eligible for a downward departure to offense level for minor role in the offense.

J. Failure To Request A Special Jury Verdict Form

Throughout the course of the trial, several agents and conperating witnesses testified to multiple conspiracies and drug types and quantities. Prior to deliberation, counsel failed to request a 'special jury verdict form' for the venirepersons to consider the many drug type, and quantities petitioner may have been solely responsible for. Had counsel predictively provided the Court with a special verdict form

instead of a 'general  verdict form, there is a strong likelihood
and reasonable probability that petitioner could have been convicted
under the default drug statute, 21 U.S.C.A. § 841(b)(1)(C), assigning
the lesser of drug types and quantities for marijuana. US v. Bailey
270 F.3d 83, 88 (1st Cir. 2001); Richardson, 526 US 813, 817 (1999).
Strictland, 466 U.S. 668 (1984).  See Transcripts, September 7, 1999,
pp. 345; September 10, 1999, p. 638, lines 14 - 16.

K. Failure To Properly Argue Drug Quantity Attributed To Petitioner

Petitioner contends that counsel failed to properly argue, or pre-
sent an effective argument with respect to drug quantity involvement.
Based on testimony from cooperating witness who had everything to lose,
Mr. Orosco, testified that at one point, "he saw 120-kilos of cocaine
counted and placed in a suitcase to take to Chevere's mother's house."
Transcripts, September 13, 1999, p. 772, lines 6 - 21; Tr. September
10, 1999. p. 642, lines 9 - 13. Orosco and Chevere, allegedly received
250 kilos in July 1997, September 10, 1999 Transcripts, p. 643, but,
however, Orosco took 200 kilos of the 250 kilos for himself to ship
to New York, macho (Raul Rivera) took fifty (50) and gave Chevere
five (5) kilos from the  alleged 50-kilos. September 19,1999, p. 646.

Because drug quantity was lucidly an issue, counsel was ill-equip-
ped in arguing atttributability of 5-kilos of cocaine to Chevere...
based on cooperating witness Orosco's testimony. See Nichols v. US,
75 F.3d 1137 (7th Cir. 1996)(trial counsel's failure to object or
argue the amount of drugs attributed to defendant based on calculation
of the sentencing Guidelines, amounted to ineffective assistance
of counsel where only witness' testimony gave wide range of amounts

Page Twenty-Four

and the court failed to make any findings of credibility of said
witness' testimony).

Attributing more drugs than responsible for must be raised at
sentencing. See US v. Shattuck, 961 F.2d 1012, 1015 (1st Cir. 1992);
US v. Haggert, 980 F.2d 8, 11 (1st Cir. 1992)("We have discretion to
review waived guideline claims in horrendous cases where a gross mis-
carriage of justice would occur.")

Counsel's failure to present amenable caselaw in support of this
claim resulted in petitioner Chevere being held responsible for the
distribution of at least 1,000 kilograms of cocaine, 5-kilos of heroin
and 5,000 pounds of marijuana. Counsel could have mustered an agreement
that the government erred in attribution of the above drug quantities
based on the government's failure to show defendant had the capability
to transport such a large amount of drugs. U.S.S.G. § 2D1.1, cmt.n 12
if, based on research and diligence, counsel could have also established
that petitioner did not intend to provide, or wasn't reasonably capa-
ble of providing, the agreed upon quanitites. US v. Colon-Solis,
2004 WL 35467, No. 01-1773 (1st Cir. 2004); Goodine, 326 F.3d 26, 27
(1st Cir. 2003).

L. Failure To Argue Burden Shifting Tactics Of The Government And Mental
Deliberation Of the Venirepersons

Records indelibly demonstrate the government's tactical decisions
to undermine justice and bereft petitioner a fair trial. On September
10, 1999, at page 663, Attorney De Juan raised a logical objection
to the venire persons reading Title III wiretap interception trans-
cripts prior to the jury having heard the audible tapes. Moreover, the
transcripts precociously revealed a short description of the date(s)

Page . Twenty-Five

of the calls, individuals names and other alleged participants, for example. Each page of the transcripts identified the participants as each spoke. September 13, 1999, pp. 764 - 766. That this precocious and preliminary revelation and proffered conversations was done and presented to the jury as a tactical decision by the Government to undermine justice and rive petitioner's hopes of a fair trial. . . shifting the burden of proof from the government to the defendant.

Additionally, because a contemporaneous objection was lodged, the failure of counsel De Juan to request an instruction allowed the jury to reach a predisposition of petitioner guilt or complicity in the conspiracy, as well as, a vogue mental act of deliberation before having heard all the evidence well before deliberation. Nevertherless, the entrenched government tactics subject petitioner to self-incrimination which further deprived him of a fair trial, because petitioner --without the assistance of an voice exemplar expert--was unable to take the sting out of what the venirepersons had read, and then heard. Cf. Hoffman v. US., 341 US 479, 486 (1951); Marchetti, 390 US at 53.

Furthermore, such a calculable manuever proved highly egregious because petitioner presented no witnesses in his behalf, no testimony on his behalf to lessen the impact of the jurors predisposition. To be sure, the presumption of injury can sometimes be rebutted. But on the facts of this case, the errors loom particularly large and, hence, the likelihood of harm is correspondingly difficult to rebut. For one thing, there's some reasons to believe that defense counsel's timely intervention might have been productive. For another thing, human experience teaches that people frequently give

Page Twenty-Six

special credence to the written word. Compare e.g. **Job** (Holy Bible)
19:23 ("Oh that my words were now written."). Quoting US v. Parent,
954 F.2d 23 (1st Cir. 1992).

M. Failure To Seek Funding For Voice Exemplar Expert To Determine
Authenticity Of Title III Recordings Of Petitioner's Voice

The issue of voice comparisons of defendant's was a critical
factor in convicting petitioner. So critical that counsel was obligated
to request funding under the Criminal Justice Act, 18 U.S.C.A.
§ 3006A, for a 'voice exemplar expert.'

Agent Plichta, on September 2, 1999, testified that he had
previous experience in 'voice identification but, however, admitted
that he had never attending school to be certified. pp. 105 -106,
lines 2 - 25.
In an attempt to at least muster a defense, and discredit Plichta's
tesimony and credibility, it was crucial that an "expert" be subpoened
and held to testify in an effort to create a reasoanble doubt,
that the voice heard on the tapes was not that of petitioner.
Such a tactical and strategic choice would have created a plausible
reasonable doubt. Failure to do so, therefore, amounts to ineffective
assistance of counsel, ... and, more importantly, because Plichta
never was "certfied by the court as an expert witness."

Nevertheless, Orosco testified lengthy as to his ability to
determine individual patterns or calibrations, as a **de facto** lay
opinioned expert, but only because Orosco had an imprimatur trans.cript
given to him prior to his testifying in court. Tr. Sept. 10, 1999,
pp. 668, lines 16 - 23; 669, Lines 14 - 25 and 672. September 13,1999
p. 766. Cf. US v. Baynes, 687 F.2d 659 (3d Cir. 1982) holding

Page Twenty-Seven

that: Trice's attorney's acquaintance with the sound of the client's voice cannot serve as a bar to the allegation of ineffective assistance raised in this case. The Court held in Bayne's that for Trice to prevail, he need not prove that it was not his voice on the intercept recording; instead, he need only show that his trial attorneys "exploration of the voice exemplar issue might have led to a viable defense and a verdict favorable to [him]. In other words, Trice need only show that his attorney's ineffectiveness wasn't harmless, beyond a reasonable doubt. Id at 671.

Had trial counsel explored this information, through proper cross-examination, counsel could have revealed a 'labyrinthine' of lies and deceptions from Orosco, because in July 1997, Orosco didn't know that his own drug dealings and conversations were being recorded, plus, Orosco didn't know the petitioner by the names of "Junior or Chevere", but those are the exact same names that were on the recording tape conversations alleged identified by him.

N. Ineffective Assistance For Failing To Severe Petitioner

Throughout the trial of this case, Jorge Hernandez, Jose Diaz, Luis Torres and Hernandez Miller, all cooperating witnesses, provided plethoric information concerning 'multiple conspiracies prior to the purported case at bar. These unrelated conspiracies involved drug dealings stemming from as far back as 1992 - 1997. Had counsel De Juan filed a viable and effective pretrial motion to severe Chevere from the other co-conspirators, Chevere would not have been the recipient of: (1) those previous drug dealings and operations; (2) co-conspirators having paid Orosco $45,000 in money orders

Page Twenty-Eight

and cash to secure a $625,000 debt for 250-kilograms of cocaine;
(3) shooting, murders and mayhem; (4) threats and obstruction of
justice to prevent cooperating witnesses from testifying; (5)
crack cocaine dealings; and (6) the murder of Cruz-Quinones.
Counsel De Juan's failures to challenge the above mentioned areas, seek
severance, resulted in prejudice to petitioner because, it made
it appear as though petitioner was a very dangerous individual
despite no violence being charged in the instant crime, and, albeit,
no weapons or drugs were confiscated. See Rule 12(3)(D), 14 (a),
F.R. Crim. Pro.  Pages 615 - 621, 692, 842 - 843.

O.    Counsel's Deficient Trial Performances

During the two week trial of this matter, Attorney De Juan
lacked any real sense of bravura and poise. . . in the presentation
of petitioner's criminal case. All vestiges of an "adversarial
atmosphere' were rived. The impetus behind counsel's deficient
performance was a 'lack of interest in his client as a person.'

Starting from September 1, 1999 - September 24, 1999, De Juan
became, and was, so disoriented that he only participated in minimum
discussion and cross-examinations, ...lodging only perfunctory
stipulations regarding several languistical specialist, Tr. Sept.
2, 1999, pp. 146 - 47; 159; p. 832;. . . stipulating to Chevere
being an auto mechanic  working for Fast Transporation; (2) did
not attempt to drum up a challenge to the authenicity of the Title III
tape recordings intercepts as counsels, Dansoh and Alvarez, pp.
212 - 221; (3) failed to request guidance from the court as

Page  Twenty-Nine

to what its standing pratice was regarding "not admonishing jurors
prior to break, not to discuss the cases amongst themselves, to
prevent mental deliberations before  hearing all evidence, pp.
172, 230, 665, 839; (4) no discovery request for cooperating witness,
Hernandez Miller, and Orosco, Brady/Jencks or 302's, as requested
by co-counsels Vega, Gonzalez and Aponte; (5) no cross examination of
one of the government's chief witnesses, Hernandez Miller, regarding
his knowledge of Chevere's standing and status in the conspiracy
on direct exam, Sept. 8, 1999, pp. 466, 485; (6) in fact, there
was not cursory examination of any of the F.B.I. Agents, e.g.
Aponte, Rosa, Olshock, Montalvo and Grojales, and Meade, who were
the two persons connected to the apprehension and arrest team
of Chevere; (7) the only attempt to present any type of meaningful input
with respect to Montalvo was a 'request for stipulation' that
Chevere worked an auto -mechanic at Fast Transportation  (8) lacked
any effective cross-examination of Luis Torres Orosco regarding
his obsrvations of the cocaine shipment in July 1997, while in
the truck with Macho, at a distance of over one-hundred feet;'
whether Orosco had binoculars; surveilance equipment, the color
of the gun Chevere allegedly had, clothing, time of day, weather
conditions, whether it rained, sunny or bright, etc, and more
important, whether he knew that Plichta's surveillance team was
also there, and why Plichta never saw Chevere if both were watching
the same transactions;, Sept. 23, 1999, pp. 1424 - 27; (9) making
baseless and unsupported or inapposite arguments which the Court
determined was not viable, Sept. 10, 1999, p. 666, line 1 - 13;

p. 764; 1372-1416; (10) cross examine Orozco as to his lay expertise in the drug
language or idomatic expressions which allowed Orozco to de-code drug messages
without former education or schooling; (11) joining in on contemporaneous objections
in tandem with co-counsels, without lodging any serious objections and arguments on
his own; (Tr. 692, 750-53); (12) lack of preparation to oppose jurors use of writ-
ten transcripts along with audible tapes of Title III intercepts to obviate unfair
prejudice to defendant, (Tr. 764-776); (13) failing to present arguments that the
defendant could not conspire with a 'government agent, U.S. v. Lewis, 53 F.3d
29 (4th Cir. 1995); U.S. v. brink, 39 F.3d 419 (3d Cir. 1994); U.S. v Barboa,
777 F.2d 1420 (10th Cir. 1995)(§2255 vacated and remanded where defendant pleaded
that his alleged conconspirators was a government agent); Sullivan v. U.S., 1995
U.S. App. Lexis 16590 (7th Cir. 1995)()(ineffective assistance of counsel if counsel
failed to challenge conviction for conspiracy with government agent); (14) to
pursue a plausible entrapment defense where Orozco's testimony was overshadowed
by Agent Plichta, that he never saw any drug transctions, U.S. v. Singh, 54 F.3d
1182, 1189 (4th Cir. 1995); harris v. U.S., 37 F.3d 133, 136 (4th Cir. 1999): (15)
failing to object to level 38 under 2D1.1, USSG, for possession with intent to
distribute at least 1,000 kilos of cocaine, 5-kilos of heroin and 5,000 pounds  of
marijuana, where petitioner was convicted of 250-kilos of cocaine, see Blakely v.
Washington, No. 02-1632, 2004 WL 1402697, 543 U.S. ____ (June 24, 2004), see
PSIR pp. 8-9; (16) to object to the court's preponderance of evidence findings of
1,000 kilos of cocaine when the jury find defendant guilty of 250 kilos...implying
a second convictions without a jury determination in contrast to Blakely v. Wash-
ington, supra; (17) application of the Guidelines for posssession of a firearm during
the commission of the instant offense under USSG 2D1.1(b)(1), adding two points,
although defendant was never charged in the superceding indictment with a firearm,
a Brent v, Crawford issue, No. 2:02-CR-00302 PGC (D. Utah July 7, 2004) and Blakely,
supra. See Osborn v. Shillinger, 861 F.2d 612 (10th Cir. 1988)(reckless disregard
for his client's best interest and apparently with intent to weaken case).

Page Thirty-One

P. Judicial Improprieties And Errors

Defendant Chevere contends that the court committed egregious er-
rors when it overruled (by implication) the jury's findings of guilt
for 250-kilograms of cocaine, ...finding the defendant responsible for
1,000 kilograms of cocaine, and sentenced defendant accordingly - -
based on its preponderance of evidence findings - contraindicate to
Booker, 543 U.S. ____ (2004) and Blakely v. Washington, supra. See
United Statges v. Nelson-Roriquez, 319 F.3d 12 (1st Cir. 2003).

Moreover, the enhanced sentence based on a firearm, where no such
mention was couched in the superceding indictment, further affronts
Booker and Blakely. The court's use of the preponderance of evidence
standard was an impermissible overreach of the Supreme Court's authori-
ty above, which is now unconstitutional (due to Booker and Blakely)
because, the court's decision amounted to an implied 'second conviction'
without a finding of guilt by a jury in violation of defendant's Sixth
Amendment rights, U.S. Constitution. Booker, moreover, impliedly
overruled Dunnigan, 507 U.S. 87 (1992), where the Supreme Court made
it lawful for a judge to enhance a sentence based upon judicial find-
ings. Therefore, these issues fall square within the Teague v. Lane,
489 U.S. 288 (1980) exceptions to non-retroactivity rule.

Q. Prosecutorial Misconduct.

As alleged in Section A supra, pages 4 - 7, defendant claims that
the Government committed grave misconduct by creating a subterfuge
when no crime existed--in order to bring the defendant before this
Federal District Court for prosecution on a federal crime of conspiracy
- in an effort to unlawfully convict an 'innocent man' whose only
crime was affiliation, and employment as a mechanic in Mr. Raul

Page Thirty-Two

Rivera's place of business, Fast Transportation. See e.g. <u>Berger   v.
United States</u>, 295 U.S. 78, 88 (1935)(the prosecutor's duty in a
criminal  prosecution is to seek justice). Although the prosecutor
should "prosecute with earnestness and vigor", she may not use 'im-
proper methods calculated to produce a wrongful conviction.'" See
<u>United States v. Young</u>, 470 U.S. 1, 7 - 11 (1985); <u>Napue v. Illinois</u>
360 U.S. 264, 269 (1959); <u>Mooney v. Holohan</u>, 294 U.S. 103, 122 (1935)
(per curiam). Compare <u>Olano</u>, 507 U.S. 725 (1993).

    R. Appellate Counsel's Ineffectiveness

    Under <u>Strictland v. Washington</u>, 466 U.S. 668 (1984), to prevail
on a claim of ineffectiveness of counsel (appellate), a defendant must
show that "counsel's representation fell below an objective standard
of reasonableness", id at 688, and that there is a "reasonable pro-
bability that but for counsel's unprofessional errors, the results of
the proceedings would have been different." id at 694.

    When the claim involves appellate counsel, a defendant must show
that "there is a reasonable probability that the reults of the direct
appeal would have been different if the argument had been made."
See <u>Chambers v. United States</u>, 157 F.3d at 566.

    In this case, defendant concerns in the above areas mentioned,
arguments A-Q, appellate counsel was obligated to develop an adequate
record for review from the trial proceedings, and conduct an indepen-
dant investigation of his own into possible claims of ineffective
assistance of trial counsel, as a 'precautionary measure, before filing
any papers on appeal. Appellate counsel refused and failed to conduct
an independant investigation for possible ineffective assistance of

Page Thirty-Three

counsel claims as required by Evitss v. Lucey, 469 U.S. 387 (1985); Murray v. Carrier, 477 U.S. 378 (1986) and Kimmelman v. Morrison, 477 U.S. 365 (1986), to save trial counsel's integrity and honor, needless to say, reputation.

Appellate counsel, if porperly investigated and professionally pursued, had a winnable issue(s). Had appellate counsel presented these defenses cited above, the results of defendant's appeal would have been different. Had counsel been more fluent in the law, evaluate its applications to the facts, see Correal v. U.S., 479 F.2d 944 (1st Cir. 1973), defendant would not have been faced with forty-five years imprisonment. See Anders v. California, 386 U.S. 738 (1967) and, therefore, the adversarial process was relaxed by appellate counsel's deficient performances.

Ineffective assistance of counsel on direct appeal may be shown if the records demonstrate the claim. See e.g. U.S. v. Martinez, 136 F.3d 972, 979 (4th Cir. 1999).

S. Cumulative Effects Of All Of Counsels Errors Require Reversal Of Defendant's Conviction And Sentence.

Defendant's rights to the effective assistance of counsel were violated by the cumulative effects of trial and appellate counsels errors. If the verdict is to stand, the court must be able to say with a fair degree of assurance that the errors did not skew the verdict. See Ruiz-Roche v. Pepsi Cola or PR Bottling Com, 161 F.3d 77, 83 (1st Cir. 1998).

Once this court scrutinizes the record's as a whole, and aggregates the collective effects of trial and appellate counsels' multiple

Page Thirty-Four

errors, it cannot be said with any certainty that Defendant Chevere received a fair trial. Compare <u>United States v. Sepulveda</u>, 15 F.3d 1161, 1195-96 (1st Cir. 1993). As such, defendant Chevere is entitled to a new trial or vacation of his conviction and sentence.

### CONCLUSION

This case is tainted by uncorrected constitutional errors during rudimentary stages and, on direct appeal...leading to defendant's conviction and sentence, and affirmance of his appeal. Because these uncorrected errors are  typical of those that have undermined public confidence, fairness and the integrity of our democratic system, <u>Olano</u>, 507 U.S. 725 (1993); the significance of this case extends well beyond the interest of those that are personally involved in it.  When a criminal defendant is compelled to pay his life for his lawyers erros, the effectiveness of our adversarial and criminal justice system - as a whole - is undermined.

WHEREFORE, for the foregoing reasons, defendant prays that this Motion be granted, and his sentence and conviction be vacated.

Respectfully Submitted

Dated: _3 /22 /05_

_Angel Chevere Gonzalez_

Angel C. Gonzalez 16149-069
USP Allenwood
P.O. Box 3000
White Deer, Pa. 17887-3000

CERTIFICATE OF SERVICE

I, hereby certtify that a true copy of the instant motion and attachments were mailed, postage paid, first class, this _23_ day of _March_ 2005, and properly adderssed to: _US ATTORNEY DISTRICT of Puerto Rico_ _350 Carlos CHARDon AVE, San Juan P.R. 00918_

_Angel Chavarro Gonzalez_

Angel C. Gonzalez
USP Allenood
P.O. Box 3000
White Deer, Pa. 17887