distribute at least 1,000 kilograms of cocaine, five (5) kilograms of heroin, and 5,000 pounds of marihuana. That section provides that offenses involving 150 kilograms or more of cocaine have a base offense level of 38.   <u>38</u>

32. Specific Offense Characteristics: Since firearms were possessed during the commission of the instant drug related offense, a two (2) level-increase is warranted pursuant to Guideline § 2D1.1(b)(1).   <u>+2</u>

33. Victim Related Adjustment: None.   0

34. Adjustment for Role in the Offense: None.   0

35. Adjustment for Obstruction of Justice: None.   0

36. Adjustment for Acceptance of Responsibility: Since the defendant did not accept responsibility no further adjustment is applied.   <u>-0</u>

37. TOTAL OFFENSE LEVEL: 40   40

PART B.  THE DEFENDANT'S CRIMINAL HISTORY

   <u>Juvenile Adjudications</u>

38. None known.

   <u>Criminal Convictions</u>

| Date of Arrest/ Age | Charge/ Agency | Date Sentence Imposed/ Disposition | Guideline/ Score |
|---|---|---|---|
| 39. 12-24-86 Age: | Illegal Appropriation Superior Court, Bayamón, PR | The defendant was sentenced to a term of imprisonment of six (6) months. | 4A1.2(e)  0 |

9

*Exhibit 1*

Details of the offense were not available.

| | | | | |
|---|---|---|---|---|
| 40. | 10-25-91<br>Age: | Attempted Murder reduced to aggravated assault, and violations to Art. 6 and 8 of the P.R. Weapons Law, Superior Court, Bayamón, PR Cr. No G91-4172-4178. | 7/28/92: The defendant was sentenced to terms of imprisonment of two (2) years and six (6) months as to each count respectively. | 4A1.1(a)<br><br><br><br><br><br><br><br>3 |

Copies of the official complaints were requested, but as of this writing, we have yet to be favored with a response.

| | | | | |
|---|---|---|---|---|
| 41. | 10-31-91<br>Age: | Robbery reduced to possession of stolen goods and violations to Art. 6 and 8 of the P.R. Weapons Law. Superior Court, San Juan, PR. Cr. No. KPD 92G-0158, KLA92G-0176-179. | 11/23/92: The defendant was sentenced to terms of imprisonment of three (3) years as to each count to be served concurrently with each other and consecutively with the sentence previously imposed at the Bayamon Superior Court. | 4A1.1(a)<br><br><br><br><br><br><br><br><br><br><br><br><br><br>3 |

On or about October 31, 1991, Angel Chevere-Gonzalez, while acting in concert with another person, used violence and intimidation against Ana C. Casillas-Colon, a representative of Central Bank, el Amal Branch, and against her will, took $36,438.76 that were in her possession and that were the property of said Bank. In order to commit said robbery the defendant used a .357 magnum revolver and an Ingram Machine Gun, both weapons were loaded, and he possessed and carried them without having legal permission form the pertinent authorities.

| 42. | 07-10-92 Age: | Attempted First Degree murder and violations to Art. 8-A, 5, 11 (2 counts), 6, 8, and 32 (2 counts), of the P.R. Weapons Law. Superior Court, Carolina, PR Cr. No. FVI93G0002, F1A93G0021-22, FLA93G0357-360 and FLA92M0459-460. | 8/4/93: The defendant was sentenced to terms of imprisonment of fifteen years (Art. 8A, weapons Law), twelve years (Art. 5), ten years (Attempted Murder), two years (Art. 6 weapons Law), three years (Art. 8 and 11 of the Weapons Law) and to six months (Art. 32 weapons Law). Said terms to be served concurrently with each other but consecutively with any other sentence previously imposed. | 3 | 4A1.1(a) |
|---|---|---|---|---|---|

According to the Official Court Complaint, on July 10, 1992, in Trujillo Alto, P.R., the defendant Angel H. Chévere-González was arrested by the P.R. Police. The defendant was acting in concert with two other individuals and in illegal possession of an automatic AR-15 Assault Rifle with an obliterated serial number, which he used to shot Police Officer Heriberto Díaz-Díaz, Badge #15909, hitting him in the arm. The defendant was also found to be in illegal possession of a .380 Beretta pistol, also with an obliterated serial number. The defendant also pointed the rifle towards Policeman Jesús Santos-Rivera, badge #17320.

**Criminal History Computation**

43. The subtotal of the criminal history points is **nine (9)**. Since at the time of the arrest the defendant was on the Electronic Monitoring Program of the Bayamón P.R. Probation Office, and since the defendant committed the instant offense less than two (2) years after being released from imprisonment, **three (3) points are added** pursuant to

11

Guidelines Sections 4A1.1(d) and 4A1.1(e). The total of the Criminal History Points is **twelve (12)**. According to the sentencing table (Chapter 5, Part A), Ten (10) to Twelve (12) criminal history points establish a **criminal history category of V**. However, since the defendant was over 18 years old at the time of the instant offense, the instant offense involved a conspiracy to possess with intent to distribute controlled substances, and the defendant has two prior felony convictions for crimes of violence, pursuant to USSG §4B1.1, he is **considered a career offender**. Based on the statutory maximum term of imprisonment of life, the **offense level should remain at forty (40)** and the criminal history category should be increased to VI. Based upon a total offense level of 40 and a criminal history category of VI, the guideline imprisonment range is from 360 months to life imprisonment.

<u>Other Arrests Conduct</u>

44. None Known.

PART C. SENTENCING OPTIONS

<u>Custody</u>

45. Statutory Provisions: The statutory maximum term of imprisonment is life. The minimum term is ten (10) years. 21 U.S.C. § 841(b)(1)(A).

46. Guideline Provisions: Based upon a total offense level of 40 and a criminal history category of VI, the guideline

Section 3D1.2 permits grouping of closely related counts. Subsection (b) permits grouping "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan."

*[Text]* Lopez's crimes satisfy the first requirement of subsection (b) of §3D1.2. Victimless crimes, such as those involved here, are treated as involving the same victim "when the societal interests that are harmed are closely related." U.S.S.G. §3D1.2, Application Note 2. The Fifth and Eleventh Circuits have held that the societal interests implicated by drug trafficking and money laundering are not closely related because narcotics distribution "increas[es] lawlessness and violence" while "money laundering disperses capital from lawfully operating economic institutions." *U.S. v. Gallo*, 927 F.2d 815, 824 (5th Cir. 1991); see also *U.S. v. Harper*, 972 F.2d 321, 322 (11th Cir. 1992). We disagree. The money laundering prohibition was adopted as part of the Anti-Drug Abuse Act of 1986. See Act of October 27, 1986, Pub. L. No. 99-570, 100 Stat. 3207. The legislative history of §1957 demonstrates that Congress's primary purposes in prohibiting money laundering were to add a weapon to the arsenal against drug trafficking and to combat organized crime. See S. Rep. No. 99-433, at 4, 9–13 (1986); H.R. Rep. No. 99-855, at 8 (1986). The societal interests harmed by money laundering and drug trafficking are closely related: Narcotics trafficking enables traffickers to reap illicit financial gains and inflict the detrimental effects of narcotics use upon our society; money laundering enables criminals to obtain the benefits of income gained from illicit activities, particularly drug trafficking and organized crime. See also *Most Frequently Asked Questions About the Sentencing Guidelines* 20 (7th ed. 1994) ("[B]ecause money laundering is a type of statutory offense that facilitates the completion of some other underlying offense, it is conceptually appropriate to treat a money laundering offense as 'closely intertwined' and groupable with the underlying offense.").

We do not believe that this position eliminates the money laundering laws as a weapon in the war against drug trafficking. The prohibition against money laundering still stands, and enables law enforcement officials to reach those in a drug conspiracy who clean the proceeds of the illicit activity but do not participate in the underlying criminal conduct. Grouping the crimes of conspirators who engage in both trafficking and laundering merely implements the Sentencing Commission's direction to group closely related counts.

Lopez's crimes also satisfy the second requirement of subsection (b) of §3D1.2. Lopez's acts of drug trafficking and money laundering were connected by a common criminal objective. Lopez laundered money to conceal the conspiracy's drug trafficking and thus facilitated the accomplishment of the conspiracy's ultimate objective of obtaining the financial benefits of drug trafficking.

We reverse the district court's decision to reject grouping of these offenses under §3D1.2 and remand for the district court to resentence Lopez. *[End Text]* —Per curiam

*Dissent:* Lopez's crimes involve different victims because, as the Fifth Circuit reasoned in *Gallo* they invade "distinct societal interests." Therefore, the crimes cannot be grouped under subsection (a) or (b) of Guidelines Section 3D1.2. Subsection (c) does not apply if we can be sure that there was no "double counting" of "offense behavior." The analysis in the *Most Frequently Asked Questions* book recognizes that distributing drugs and laundering proceeds are distinct. See also *U.S. v. Lombardi*, 5 F.3d 568, 571, 54 CrL 1032 (CA 1 1993). Finally, subsection (d), which applies when the offenses involve substantially the same harm and the offense level is determined largely on the basis of harm or loss, or when the counts were "continuous in nature and the offense guideline is written to cover such behavior," does not apply. Lopez's crimes are not of the same general type and are not closely related.

Although her money laundering activity cleansed funds that were derived from the drug trafficking participation in the trafficking scheme also that were not laundered. Nor has she shown how could qualify under the "continuous in nature Fernandez, J.

## CA 2 NARROWS REACH OF DRUG LAW PROVISION IMPOSING HIGHER SENTENCES ON RECIDIVISTS

*Court finds ambiguity in statutory language establishing procedures for proving prior...*

The enhanced sentences provided in 21 USC companion provisions for defendants with one prior felony drug convictions are not triggered that were not prosecuted by indictment or waiver of, a majority of the U.S. Court of Appeals Second Circuit ruled January 13. The majority this conclusion by invoking the rule of lenity finding an ambiguity in the provision that procedure for establishing priors, 21 USC decision creates a circuit split. (*U.S. v. Collado-Rosa*), CA 2, No. 95-1512, 1/13/97)

The government sought to raise the defendant's datory minimum sentence from 10 years to basis of a prior drug conviction. Under 851(a)(2), the information that is used to give the prior conviction may not be filed "if the increased punishment which may be imposed is punishment term in excess of three years unless the person waived or was afforded prosecution by indictment offense for which such increased punishment may imposed." The government maintained that the prosecution-by-indictment requirement refers to the current offense, whereas the defendant argued that it refers to prior offense. Under the defendant's interpretation prior would not be usable, because the jurisdiction which it was obtained, Puerto Rico, does not use juries.

The majority was not persuaded that either interpretation is clearly correct. The government claimed that the defendant's reading leads to a result under the Ex Post Facto Clause, but the majority said that can be avoided by reading "offense for which" mean "offense by virtue of which." The majority pointed out that more straightforward language could have been used had Congress wanted to refer to the current offense. On the other hand, the defendant's argument that the language is surplusage as applied to the current conviction, because all federal felonies prosecuted by indictment, is also unpersuasive, the majority said. Given decisions from five appellate courts going the other way, the majority could not say that the language at issue clearly refers to the prior offense.

In light of the ambiguity in Section 851, the rule of lenity must be applied, the majority concluded.

Judge Winter concurred but said resort to the rule of lenity was unnecessary. Of the two possible interpretations [...] statute, the [...] whereas the government [...] he said.

*Opinion:* De [...] scheme to [...] the Dominican [...] kilograms of [...] was arrested, and [...] Rosa was convicted [...] minimum se [...] when an offense [...] committed by a [...] drug offense. The se [...] the government [...] 1982 Rivera-Rosa [...] Rico of marijuana [...] sentence. Puerto Rico [...] jury. Thus, Rivera- [...] waiver thereof.

Under Section 851(a)(1) [...] an offense under this [...] not receive increase [...] conviction unless the gove [...] convictions to be relied [...] information may not [...] punishment which [...] in excess of three y [...] was afforded prosecutio [...] such increased punis [...] whether the phras [...] punishment may [...] or to the offense of [...] Rivera-Rosa contends tha [...] or waiver thereof [...] that Section 851(a)(2 [...] felony information in [...] a grand jury in [...] that the statute re [...] prior felony offense, m [...] its position has been [...] considered the issue.

The government argues fi [...] (2) as applying to th [...] language of the stati [...] be increasing the pe [...] the argument goes, [...] them. This argument fol [...] F.2d 604 (CA 9 1987). [...] 1407 (CA 10 1990).

The flaw in this argument [...] necessarily the result if [...] does not refer to the [...] conclude that the [...] punishment is be [...] the words "offense [...] construed to mean "offen [...] reason of which." Either [...] the conclusion that, a [...] felony offense, that pr [...] offense on the basis of [...] is being enhanced.

The government's second [...] conviction(s)" and "previous [...] Section 851 when referenc [...] or conviction but n [...] 851(a)(2). As the I [...] intended [the defendan [...] phrase simply would hav [...] prior conviction,' " 82 [...] laws. The *Espinosa* co [...] of the term 'offense' i [...] referring to Sectio [...] valid way to read t [...] being used is "offens

The Criminal Law Reporter (ISSN 0011-1341) is published weekly each Wednesday except the second Wednesday in July, Labor Day Week, Wednesday following Christmas at a subscription rate of $725 for the first year and $689 per year thereafter, by The Bureau of National Affairs, Inc., [...] Street, N.W., Washington, D.C. 20037. Periodical postage rates paid at Washington, D.C., and additional mailing offices. POSTMASTER: Send add[ress changes] to The Criminal Law Reporter, The Bureau of National Affairs, Inc., P.O. Box 40949, Washington, D.C. 20016-0949.

*Exhibit 2*

itute, the defendant's interpretation makes the government's creates an inexplicable e said.

*inion:* Defendant Leopoldo Rivera-Rosa was heme to import heroin. After flying from New : Dominican Republic, he escorted two couriers lograms of heroin to San Juan, Puerto Rico. rrested, and the heroin was seized.

was convicted of drug trafficking and received nimum sentence that 21 USC 841(b)(1)(A) an offense involving a kilogram or more of itted by a person with a prior conviction for a nse. The sentence was based on an information, vernment pursuant to 21 USC 851, charging era-Rosa had been convicted under the laws of marijuana possession and had received a two 'uerto Rico does not provide for indictment by a is, Rivera-Rosa was not prosecuted by indictthereof.

n 851(a)(1), a defendant "who stands convict- under this part," (i.e., 21 USC 841 et seq.) e increased punishment because of a prior is the government files an information stating to be relied upon. Section 851(a)(2) provides: n may not be filed under this section if the iment which may be imposed is punishment for of three years unless the person either waived prosecution by indictment for the offense for eased punishment may be imposed." The questhe phrase "the offense for which such innent may be imposed" refers to the instant offense of prior conviction ontends that the requirement of prosecution by aiver thereof relates to the prior felony offense, n 851(a)(2) therefore barred the filing of a rmation in his case because Puerto Rico does and jury in its prosecutions. The government e statute requires that the instant offense, not offense, must have been prosecuted by indictn has been adopted by every circuit court that he issue.

nt argues first that failure to interpret Section plying to the instant offense would ignore the of the statute and would mean that a court sing the penalty for the prior felony offense. nent goes, there would be an ex post facto gument follows the logic of *U.S. v. Espinosa*, A 9 1987). See also *U.S. v. Adams*, 914 F.2d 10 1990).

is argument is that an ex post facto problem is he result if one determines that the language refer to the instant offense. Although one may le that the language in question means that iment is being imposed for the prior felony is "offense for which" could just as plausibly mean "offense by virtue of which" or "offense ch." Either interpretation would be consistent sion that, although the statute refers to the nse, that prior offense is being referred to as e basis of which the sentence for the instant enhanced.

nt's second argument is that the terms "prior d "previous convictions" are consistently used ien reference is being made to the prior felony ction but neither of those terms is used in '). As the *Espinosa* court said, "[h]ad Conhe defendant's] interpretation, it seems that y would have read 'prosecution by indictment iction,'" 827 F.2d at 617. This argument has *spinosa* court observed that "the other two n 'offense' in Section 851 refer to the current ig to Sections (a)(1) and (e). However, an y to read those provisions is that the term ed is "offense under this part." Had Congress intended to refer to the instant offense, it seems it would have referred to "an offense under this part," or simply to "the offense."

A third argument in favor of the government's position is that the interpretation urged by Rivera-Rosa would lead to an "anomalous situation," *Espinosa*, 827 F.2d at 617, by excluding convictions from states or foreign countries that use a felony complaint system rather than a grand jury indictment system. Although it is clear that Congress intended in 1984 to broaden the scope of Section 841(b) prior convictions to include state and foreign convictions, it is not clear whether Congress was looking to expand the scope to include all state and foreign convictions or to include just those where the person either waived or was afforded prosecution by indictment. There is nothing anomalous about the situation that results if Section 851(a)(2) is interpreted to include within its scope all state and foreign convictions where the person either waived or was afforded prosecution by indictment.

Rivera-Rosa argues that the government's interpretation is wrong because it renders the language in question mere surplusage. All federal felony prosecutions are required to proceed by indictment. Accordingly, he argues, it would have been redundant for Congress to require that the instant offense be prosecuted by indictment or waiver thereof when it is impossible for the offense to be prosecuted any other way. Moreover, he argues, a requirement by Congress that the prior felony be prosecuted by indictment or waiver thereof is quite logical. Such a requirement provides an appropriate safeguard, namely, that the prior conviction, which is the basis for a substantial increase in punishment, was the result of an indictment by a grand jury.

This argument has appeal. However, the defendant's interpretation is not the only logical interpretation when one applies the ordinary, contemporary, common meaning of the words used. It is difficult to conclude that the interpretation urged by Rivera-Rosa is the clear meaning of this statutory provision where five circuit courts have after careful reasoning, or thoughtful consideration of such reasoning, reached the opposite conclusion.

*[Text]* Having considered the arguments in support of the competing interpretations of §851(a)(2), we are persuaded that it is ambiguous.

We conclude, based on the foregoing analysis, that there is absent with respect to §851(a)(2) an "obvious intention of the legislature," *Huddleston v. U.S.*, 415 U.S. 814, 831 (1980), to require that the instant offense, not the prior felony offense, have been prosecuted by indictment or waiver thereof. Thus, we conclude that §851(a)(2) is facially ambiguous and also that it is ambiguous as applied to Rivera-Rosa in this case (i.e., it "did not accord him fair warning of the sanctions the law placed on … [his] conduct," *[U.S. v.] Canales*, 91 F.3d [363] at 368 [CA 2 1996].). Therefore, the rule of lenity should be followed in this case, and Rivera-Rosa's sentence should not be enhanced on the basis of his 1982 conviction in Puerto Rico. Accordingly, Rivera-Rosa's sentence should be vacated, and this case should be remanded to the district court for resentencing. *[End Text]* — Thompson, J.

*Concurrence:* I would not place as much emphasis on the rule of lenity. Where an ambiguity admits of two interpretations, one of which creates an inexplicable redundancy and the other of which makes sense, I see no need to revert to the rule of lenity to resolve the ambiguity. — Winter, J.

### SENTENCING ENTRAPMENT DOCTRINE MAY HELP DEFENDANT WHO TRADED DRUGS FOR MACHINE GUN

*Predisposed defendant shouldn't get higher mandatory term if he was unaware that gun supplied by police was fully automatic.*

The mandatory sentence for the federal crime of using a firearm in relation to a drug trafficking offense may not be raised from five to 30 years, as 18 USC 924(c)(1) provides when the firearm is a machine gun, if the firearm was supplied by law enforcement officers and